# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| RALPH MUNCY AND RITA D. MUNCY, | )<br>)<br>) |
| Plaintiffs, | ) Case No. 1:14CV00016<br>) |
| v. | ) **OPINION**<br>)<br>) By: James P. Jones |
| CENTEX HOME EQUITY COMPANY, L.L.C., ET AL., | ) United States District Judge<br>)<br>) |
| Defendants. | ) |

*Ralph Muncy and Rita D. Muncy, Pro Se Plaintiffs; Brian E. Hanna, McGuireWoods LLP, Richmond, Virginia, for Defendants.*

The plaintiffs seek relief against a mortgage lender as a result of alleged fraud and misrepresentation. The defendant has filed a Motion to Dismiss Plaintiffs' First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), contending that the plaintiffs have failed to state a claim upon which relief can be granted. For the following reasons, I will grant the motion.

I.

In considering a motion under Rule 12(b)(6), I must accept as true the factual allegations made by the plaintiffs. Those allegations are as follows.

Ralph and Rita D. Muncy were the owners of real property located in this judicial district ("the Property"), and had owned it without encumbrance since

1997.  In December 2002, "due to unexpected pressing financial needs," the Muncys obtained a $25,000 mortgage loan from defendant Nationstar Mortgage, LLC, ("Nationstar") secured by the Property.[1]  (First Am. Compl. ¶ 16, ECF No. 20.)  This mortgage had an interest rate of 10.3 percent and was payable over 15 years at $273.26 per month.  The Muncys allege that their "income was not high enough to meet the debt to income ratio standards utilized by mortgage lenders when determining whether or not to approve potential borrowers for such loans." (*Id.*)

In April 2005, for home improvements, the Muncys obtained a second mortgage loan in the principal amount of $53,500 from Nationstar at an adjustable interest rate.  The Nationstar loan officer David Slayton forgot to include the "Notification for Virginia Mortgage Loan Applicants" and "various other documents" in the previously executed closing documents for this loan, and when Mr. Muncy was not available, "Slayton then coaxed Plaintiff Rita D. Muncy to commit fraud and sign [and backdate] the remaining closing documents in Plaintiff Ralph Muncy's absence."  (*Id.* ¶ 21.)  Again, the plaintiffs allege that they had insufficient income to justify the loan "according to the standard debt to income

---

[1] Although the plaintiffs also named Centex Home Equity Company, LLC, ("Centex") as a defendant, Centex changed its name to Nationstar Mortgage, LLC, in July of 2006 so that they are one and the same and will be referred to in this Opinion as Nationstar.

ratio analysis conducted by mortgage lenders when examining applications for such loans." (*Id.* ¶ 19.)

Subsequently, the Muncys "faced hardships that caused them to experience financial difficulty and fall behind in their loan payment." (*Id.* ¶ 23.) In August 2005, Nationstar contacted the Muncys and "advised they apply for another refinance to bring the loan current," and threatened to foreclose if they failed to satisfy all late payments. (*Id.*) That same month, the Muncys obtained a third mortgage loan from Nationstar in the principal amount of $71,550 with an "adjustable interest rate of 10.85%." (*Id.* ¶ 27.) They again aver they had insufficient income to justify this obligation. Despite the refinancing, the Muncys fell further behind on the mortgage payments.

On December 1, 2010, Nationstar offered to modify the third loan, reducing the interest rate, in exchange for a payment of $2,690. The modification reduced the interest of the third loan from its adjustable rate to a rate of 2.25 percent for a fixed two year period, "before abruptly resetting to 10.85% at the close of the two (2) year period, causing [the plaintiffs] to be unable to afford the mortgage payments." (*Id.* ¶ 31.) The loan fell into default.

By correspondence dated August 22, 2013, Nationstar gave notice of a foreclosure sale. On September 10, 2013, as scheduled, the property was sold at auction. The present action was filed on April 3, 2014. Jurisdiction of this court

-3-

is based upon diversity of citizenship and amount in controversy. *See* 28 U.S.C. § 1332(a). Virginia substantive law applies. *See Erie R.R. v. Tomkins*, 304 U.S. 64, 78 (1938).

In their initial Complaint, the plaintiffs asserted ten separate causes of action. On a motion of Nationstar, I dismissed all of them, but allowed the plaintiffs to replead their fraud and misrepresentation causes of action. *Muncy v. Centrex Home Equity Co.*, No. 1:14CV00016, 2014 WL 3359335, at *7 (W.D. Va. July 9, 2014).

The plaintiffs timely filed a First Amended Complaint as to their fraud and misrepresentation counts, to which Nationstar again has moved to dismiss. The motion has been fully briefed and is ripe for decision.[2]

## II.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint to determine whether the pleader has properly stated a cognizable claim. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

---

[2] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[3]

The defendant has also moved to dismiss on the basis that the Virginia statute of limitations ran before the filing of this action. A Rule 12(b)(6) motion to dismiss on the statute of limitations is available "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). As such, all facts necessary to the defense must "clearly appear[ ] on the face of the complaint." *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993).

A.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under Virginia law, a claim of fraud and misrepresentation requires reasonable reliance on the false and material statements. *See, e.g.*, *Anthony v. Verizon Va., Inc.*, 758 S.E.2d 527, 534 (Va. 2014) (recounting "the elements of common law fraud: [A] false representation of a material fact; made intentionally, in the case of actual

---

[3] The plaintiffs are proceeding pro se, but the pleadings here appear to have been prepared by an attorney and under such circumstances, no special deference is appropriate, particularly since the court has allowed a second chance to plead a proper case.

fraud, or negligently, in the case of constructive fraud; reliance on that false representation to [plaintiff's] detriment; and resulting damage.") (internal quotation marks and citation omitted).

While set forth in separate courts, the allegations of fraud and misrepresentation are the same in each count. The specific allegations are as follows:

> a. By [loan officer Derrick] Nunn (on or about December 9, 2002 near Glade Spring, Virginia), falsely asserting that Plaintiffs' income qualified them for FIRST LOAN when Plaintiffs' income was insufficient to support FIRST LOAN, CENTEX made an affirmative misrepresentation. At the time of application, Plaintiffs' income was not high enough to meet the debt to income ratio standards utilized by mortgage lenders when determining whether or not to approve potential borrowers for such loans.
>
> b. By [loan officer David] Slayton (on or about April *25,* 2005 near Glade Spring, Virginia) and [loan officer Mike] Newswanger (on or about August 30, 2005 near Glade Spring, Virginia) falsely asserting that refinancing was in Plaintiffs' best interests to avoid foreclosure proceedings on when Plaintiffs' income was insufficient to support a refinance option, CENTEX made an affirmative misrepresentation. At the time of application, Plaintiffs' income was not high enough to meet the debt to income ratio standards utilized by mortgage lenders when determining whether or not to approve potential borrowers for such loans.
>
> c. By Slayton (on or about April *25,* 2005 near Glade Spring, Virginia) and Newswanger (on or about August 30, 2005 near Glade Spring, Virginia) falsely asserting that Plaintiffs' income could support its refinance options, when Plaintiffs' income was insufficient to support refinance options, CENTEX made an affirmative misrepresentation. At the time of application, Plaintiffs' income was not high enough to meet the debt to income ratio standards utilized by

mortgage lenders when determining whether or not to approve potential borrowers for such loans.

d.     By Slayton (on or about April 25, 2005 near Glade Spring, Virginia) and Newswanger (on or about August 30, 2005 near Glade Spring, Virginia) falsely asserting that Plaintiffs qualified for SECOND LOAN and THIRD LOAN respectively, when Plaintiffs' income was insufficient to support SECOND LOAN and THIRD LOAN, CENTEX made an affirmative misrepresentation. At the time of application, Plaintiffs' income was not high enough to meet the debt to income ratio standards utilized by mortgage lenders when determining whether or not to approve potential borrowers for such loans.

e.     By Slayton (on or about April 25, 2005 near Glade Spring, Virginia) falsely asserting that RITA D. MUNCY's forgery and back-dating of the documents pertaining to SECOND LOAN were necessary for the processing of SECOND LOAN when Slayton could simply have waited for RALPH MUNCY to properly sign the loan documents, CENTEX made an affirmative misrepresentation.

f.     By Nunn failing to explain the terms of FIRST LOAN, CENTEX made a fraudulent omission.

g.     By Slayton failing to explain the terms of SECOND LOAN, CENTEX made a fraudulent omission.

h.     By Newswanger failing to explain the terms of THIRD LOAN, CENTEX made a fraudulent omission.

(First Am. Compl. ¶ 42.)

Although the plaintiffs have pleaded the claims set forth in subparagraphs a, b, c, and d with greater specificity in the First Amended Complaint, naming times, places, and names of agents who allegedly made fraudulent statements, they have not specifically alleged perhaps the most important part of Rule 9(b)'s heightened

-7-

Case 1:14-cv-00016-JPJ-PMS   Document 25   Filed 10/20/14   Page 7 of 12   Pageid#: 824

pleading requirements — the content of the fraudulent statements themselves. Rather, the plaintiffs' allegations consist of conclusory statements that the agents told them that they could afford the loans even though they couldn't, without explaining specifics like what their income was, what the debt-income ratio standards were, and what exactly the agents told them. Without more, the plaintiffs' allegations essentially amount to an assertion that the lender convinced them to take out a loan they couldn't afford.

Courts have held that there is no duty on a lender to ensure that a loan is suitable for a borrower. *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1114 (E.D. Cal. 2014); *McCarty v. GCP Mgmt., LLC*, No. 10-00133 JMS/KSC, 2010 WL 4812763, at *4 (D. Haw. Nov. 17, 2010) (noting that mortgage lenders do not act on behalf of borrowers; instead, "it is well-established that a lender acts on its *own* behalf in an arms-length loan transaction); *Sheets v. DHI Mortg. Co.*, No. CV F 09-1030 LJO DLB, 2009 WL 2171085, at *3 (E.D. Cal. July 20, 2009); *Renteria v. United States*, 452 F. Supp. 2d 910, 922-23 (D. Ariz. 2006) (noting that lenders have no duty to determine borrower's ability to repay loan, and that borrowers have "to rely on their own judgment and risk assessment to determine whether or not to accept the loan").

As to subparagraph e, the plaintiffs have not alleged what, if any, harm resulted from the alleged misrepresentation, a necessary element of any fraud

claim. Finally, subparagraphs f, g, and h simply state conclusions, which do not meet the requirements of Rule 9(b).

For these reasons, I find that the repleaded claims are insufficient.

B.

Moreover, this is one of those cases where the two-year statute of limitations for causes of action based on fraud, Va. Code Ann. § 8.01-243(A), plainly bars the claims asserted. Virginia law embraces the discovery rule for accrual of such a cause of action, meaning that the statute of limitations period begins when the fraud "is discovered or by the exercise of due diligence reasonably should have been discovered." Va. Code Ann. § 8.01-249(1); *STB Marketing Corp. v. Zolfaghari*, 393 S.E.2d 394, 397 (Va. 1990) (holding that cause of action for fraud does not accrue until plaintiff "knew or reasonably should have known of the fraud"). Due diligence means "'[s]uch a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances.'" *Id*. (quoting Black's Law Dictionary 411 (rev. 5th ed. 1979)). Whether a party has exercised due diligence depends on the unique facts and circumstances of the case. *STB Marketing Corp.*, 393 S.E.2d at 397.

The party asserting the defense initially bears the burden of showing that the statute of limitations has run. *Lo v. Burke*, 455 S.E.2d 9, 12 (Va. 1995).

However, where it is apparent from the face of the pleadings that the limitations period has run, the burden shifts to the other party to show that, "despite the exercise of due diligence, he could not have discovered the alleged fraud within the two-year [statute of limitations] period." *Schmidt v. Household Fin. Corp. II*, 661 S.E.2d 834, 839 (Va. 2008).

Here, the plaintiffs took out the mortgages that they could not afford in 2005. They do not allege that they lacked access at any point to the pertinent information for deciding whether they could afford the mortgages they took out — they claim simply that the lenders misled them by saying that they could afford these loans *despite* this information. The plaintiffs had all of the information they needed to conclude through due diligence that they could not afford the loans at the time the documents were executed. In any event, they should have realized that they could not afford the loans long before the September 2013 foreclosure and certainly by 2010, when they were already seriously delinquent on payments. *See id.* at 839-49 (holding that, where reasonable person should have suspected that something was amiss with mortgage loan at the time of refinancing, action accrued from the date of refinancing rather than from date of foreclosure).

The plaintiffs claim that the statute was tolled because they had a "continuing relationship" with the lender, a doctrine normally applied in fiduciary or other similar relationships, such as those of physician-patient or lawyer-client.

However, the plaintiffs have not cited any cases that apply this doctrine to a lender-borrower relationship; rather, Virginia courts apply the discovery rule discussed above. *See id.* (barring mortgage fraud claim based on the discovery rule); *Calderon v. Aurora Loan Servs., Inc.*, No. 1:10cv129 (JCC), 2010 WL 2306343, at \*\*4-5 (E.D. Va. June 3, 2010) (applying discovery rule to bar claim where plaintiffs should have known that their income was overstated on loan documents at the time mortgage was secured); *accord Porter v. GreenPoint Mortg. Funding, Inc.*, No. DKC 11-1251, 2011 WL 6837703, at \*4 (D. Md. Dec. 28, 2011) (barring fraud claim under Maryland's discovery rule, since plaintiffs who alleged they were misled into believing they could afford mortgage should have realized their inability to pay at time loan documents were executed, because "the information in the documents they signed would have led a reasonable person to investigate further the terms of the loan"). Moreover, the plaintiffs have not justified applying the continuing relationship rule to borrowers and lenders, who, contrary to lawyers and physicians and their clients and patients, "constitute a paradigm instance of parties whose interests are adverse." *Davidson v. Cook*, 567 F. Supp. 225, 237 (E.D. Va. 1983); *see Sheets v. DHI Mortg. Co.*, No. CV F 09-1030 LJO DLB, 2009 WL 2171085, at \*3 (E.D. Cal. July 20, 2009) (noting that absent special circumstances, there is no fiduciary duty between mortgage lender and borrower).

For these reasons, I find that the plaintiffs' fraud and misrepresentation claims are barred by the Virginia statute of limitations.

III.

The Complaint fails to state a claim upon which relief can be granted. Accordingly, it is **ORDERED** that the Motion to Dismiss (ECF No. 21) is GRANTED.

A separate judgment will be entered forthwith.

ENTER: October 20, 2014

/s/ James P. Jones
United States District Judge